NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

GEORGE T. SIMMONS, et al.,

*Plaintiffs/Appellants*,

v.

ARIZONA CORPORATION COMMISSION,

*Defendant/Appellee*.

No. 1 CA-CV 19-0047
No. 1 CA-CV 19-0048
FILED 12-05-2019
AMENDED PER ORDER FILED 12-06-2019

Appeal from the Superior Court in Maricopa County
No. LC2018-000077-001
The Honorable Sigmund Popko, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Clark Hill, PLC, Scottsdale
By Christopher Thomas Curran, Charles R. Berry
*Counsel for Plaintiffs/Appellants George T. Simmons and Janet B. Simmons*

Bruce L. Orr and Susan Orr, Long Beach, CA
*Plaintiffs/Appellants*

Arizona Corporation Commission, Phoenix
By Paul Kitchin
*Counsel for Defendant/Appellee*

———————————————

**MEMORANDUM DECISION**

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Maurice Portley[1] joined.

———————————————

**W E I N Z W E I G**, Judge:

**¶1** Appellants George Simmons ("Simmons"), Janet Simmons, Bruce Orr ("Orr") and Susan Orr appeal the superior court's order affirming the Arizona Corporation Commission's ("Commission") decision that Simmons and Orr were "control persons" of USA Barcelona Realty Advisors, LLC ("Barcelona") under A.R.S. § 44-1999(B) and thus secondarily liable under the Arizona Securities Act.[2] Because the Appellants have shown no reversible error, the decision is affirmed.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2** Richard Harkins formed Barcelona in November 2010 to develop and acquire hotels and apartments. As relevant here, Barcelona offered and sold investments to the public, including "promissory notes and investment contracts." It used private offering memoranda to describe the opportunities to potential investors. Barcelona raised over $1.4 million from ten investors between October 2012 and July 2014.

**¶3** Barcelona was governed by two primary operating documents from 2012 and 2013. The operating agreements vested day-to-day management in Harkins, but stated that "Executive Members" have "overall management and control of [Barcelona's] business and affairs," and instructed that "Major Decisions" must be approved by a majority of Executive Members, who were authorized to call meetings for this purpose. The offering memoranda echoed this point, telling potential investors that

---

[1]     The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

[2]     Janet Simmons and Susan Orr are the spouses of George and Bruce, and were named in the enforcement action only to determine the marital communities' liability.

"Executive Members have control of the company through their exclusive power to approve all 'Major Decisions.'"

¶4            Both operating agreements named Simmons and Orr as Executive Members. Simmons testified that "his view of the role of Executive Members was to protect the interests of nonvoting members in major decisions that would have affected their interests in the company," and recognized that Executive Members "would have a material impact on the success or future of the company." Orr similarly believed that Executive Members "would decide major decisions" and "driv[e] the company." Beyond that, Simmons and Orr were named as two of the company's four "Managers" in Barcelona's amended April 2013 articles of organization, and Barcelona provided their biographies to potential investors in the offering memoranda.

¶5            The administrative record also shows that Simmons and Orr signed letters from Barcelona to investors as Executive Members. They signed one letter informing investors about Barcelona's latest investment opportunity, and signed another when funds had run out to inform investors that interest payments would be delayed. And as an Executive Member, Orr collected a guaranteed salary under the operating agreement from November 2012 until June 2013.

¶6            Simmons and Orr also helped craft important documents. Simmons made extensive handwritten edits to parts of the second operating agreement, which named him an Executive Member. Simmons and Orr also had "[m]ajor input" in the offering memoranda according to Harkins, the self-described "chief draftsman." For instance, Orr assisted with the financial projections of the various investment opportunities described within the memoranda.

¶7            Simmons served as the Executive Vice President and Chief Operating Officer of Barcelona. The amended articles in April 2013 identified Simmons as owning at least 20 percent of Barcelona, although Simmons testified his interest never exceeded 10 percent. The record also included evidence and testimony that Simmons entered contracts on Barcelona's behalf, approved expense reports, signed one investor's subscription agreement, and offered two jobs at Barcelona. One of Barcelona's independent contractors testified that Harkins and Simmons "would conduct rehearsal sessions with him and another person who was brought in to market the product," and Harkins and Simmons "would pretend to be the investor and would critique the presentations of the product."

*Enforcement Action*

**¶8**        A "former officer" of Barcelona complained to the Commission in 2015 that Barcelona was misleading investors. The Commission later brought an enforcement action against Barcelona for violating the Arizona Securities Act's anti-fraud rules. A.R.S. § 44-1991. The Commission claimed that Simmons, Orr and other officers were vicariously liable for the alleged fraud as "control persons" of Barcelona.

**¶9**        An administrative law judge ("ALJ") heard the claims over seven days in May 2016. Thirteen witnesses testified, including five investors, Harkins, Simmons and Orr. Simmons, represented by counsel, and Orr, representing himself, each cross-examined the witnesses.

**¶10**        After post-hearing briefing, the ALJ issued his recommended opinion and order, which the Commission accepted on January 3, 2018. The Commission's unanimous 171-page decision found that Barcelona violated several provisions of the Act and committed eight counts of fraud involving false statements and misleading omissions made to investors.

**¶11**        The Commission also found that Simmons and Orr were "control persons" in Barcelona by February 1, 2013, and thus secondarily liable for the primary fraud, along with their marital communities. The Commission ordered that Simmons and Orr were jointly and severally liable to pay $1,215,353 in restitution to defrauded investors. The Commission also imposed administrative fines of $40,000 and $30,000, respectively. The ALJ found Simmons' testimony to be "the least credible" of those charged.

**¶12**        After rehearing applications were denied, Simmons and Orr sought judicial review and the superior court affirmed the Commission's decision. This timely appeal followed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶13**        We will affirm the Commission's decision on review unless it is "contrary to law, is not supported by substantial evidence, is arbitrary and capricious or is an abuse of discretion." A.R.S. § 12-910(E). We defer to the Commission's factual findings if supported by substantial evidence, even if other evidence before the Commission would support a different conclusion. *Waltz Healing Ctr., Inc v. Ariz. Dep't of Health Servs.*, 245 Ariz. 610, 613, ¶ 9 (App. 2018). We consider the evidence in the light most favorable to sustaining the Commission's decision, *Special Fund Div. v.*

*Indus. Comm'n*, 182 Ariz. 341, 346 (App. 1994), but are not bound by the Commission's legal conclusions, *Sanders v. Novick*, 151 Ariz. 606, 608 (App. 1986).

**¶14**　　　　Simmons and Orr do not contest the Commission's findings of fraud under A.R.S. § 44-1991.  Nor do they assert the good-faith defense provided to control persons under A.R.S. § 44-1999(B).  Instead, Simmons and Orr contend the Commission had no evidence to determine they were control persons, insisting they had no meaningful authority at Barcelona and never signed the operating agreements.  We must therefore decide whether the record includes substantial evidence to support the Commission's decision that Simmons and Orr were "control persons" at Barcelona under A.R.S. § 44-1999(B).

**¶15**　　　　The Arizona Securities Act provides that "control persons" are jointly and severally liable to the same extent as persons who commit a primary violation of A.R.S. §§ 44-1991 or -1992.  *See* A.R.S. §§ 44-1999.  The Act imposes "presumptive control liability on those persons who have the *power* to directly or indirectly control the activities of those persons or entities liable as primary violators" of the Act's anti-fraud provision.  *E. Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n*, 206 Ariz. 399, 412, ¶ 42 (App. 2003) (emphasis in original).  A finding of "control" only requires evidence that a person has the legal power to control—it does not require that the person exercise that power or actively participate in the unlawful conduct. *Id.* at ¶¶ 41-42.  Active participation is not required because the Act seeks to discourage control persons from passively allowing misconduct to occur under their watch. *See id.* at ¶¶ 41, 50.

**¶16**　　　　The record contains sufficient evidence to support the Commission's finding.　Barcelona's governing documents imbued Simmons and Orr with substantial power as Executive Members to decide important issues, and that power was also recognized in the amended articles of organization.  *See* A.R.S. § 29-681 (management powers and structures are governed by operating agreements).  Simmons and Orr testified about the critical role of Executive Members.  Both confirmed their leadership roles in written communications to investors and helped craft important governing and sales documents.　Barcelona touted their affiliation in its marketing materials.  Simmons held additional leadership positions (Executive Vice President and Chief Financial Officer), entered contracts and hired people for Barcelona.  And Orr received a guaranteed salary as an Executive Member.

¶17     Simmons and Orr argue that they did not know about or exercise their powers, did not sign the operating agreement, and had no actual powers.  But the record provides a reasonable basis to find they had power and knew it.  Apart from that, the definition of control persons under the Act does not turn on whether they exercised their legal powers.  *E. Vanguard Forex, Ltd.*, 206 Ariz. at 412, ¶¶ 41-42.  And more generally, Simmons and Orr cannot overcome the existence of substantial evidence by pointing to conflicting evidence that favors their position.  *Id.* at 409, ¶ 35.

¶18     Last, Simmons and Orr contest the Commission's finding that they became "control persons" in February 2013.  They point to the future tense of a sentence in the February 2013 offering memorandum that says Simmons and Orr "*will* serve as a member on the Executive Committee."  But the same memorandum identified them as current Executive Members, as did the operating agreements.

¶19     On this record, the Commission reasonably concluded that Simmons and Orr possessed legal power and control at Barcelona since February 2013, and thus meet the definition of control persons under A.R.S. § 44-1999(B).

## CONCLUSION

¶20     We affirm.

